CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

2021 OCT 15  PM 4: 06

DEPUTY CLERK___MS_____

UNITED STATES OF AMERICA

v.

HOLLIS MORRISON GREENLAW (01)
BENJAMIN LEE WISSINK (02)
CARA DELIN OBERT (03)
JEFFREY BRANDON JESTER (04)
  a/k/a Brandon Jester

Case No.  **4:21-cr-289-Y**

## INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

### General Allegations

### Summary of the Scheme

1.       From on or about January 1, 2011, through on or about December 29, 2015,

the defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert,**

and **Jeffrey Brandon Jester**, and others, led by **Greenlaw**, engaged in a scheme to

defraud using investment fund entities ("Fund entities"), that is, Fund III, Fund IV, and

Fund V.  As part of the scheme, the defendants offered and caused others to offer various

Fund entities to the public for investment.  The Fund entities were presented as

companies that would provide loans to residential housing developers who needed funds

to build residential developments.  Utilizing money obtained from investors and financial

institutions, **Greenlaw, Wissink**, and others caused loans to be issued to developers for

residential developments.  As part of the Fund entities' investment opportunity, investors

were led to believe that the residential housing developers, who obtained loans from the Fund entities, would be required to pay back the loans with interest, which money would then serve as the source of distributions paid to the investors.

2.    Almost from inception, Fund III paid monthly distributions to its investors using money purportedly from revenues derived from Fund III's loan portfolio. However, developers were not repaying loans obtained from Fund III quickly enough, thereby leaving Fund III without sufficient cash to pay distributions to investors from its own revenues.  At the direction of the defendants, a subsequent entity, Fund IV, began raising money from investors using representations that the funds would be used to provide loans to developers.  However, cash raised from the Fund IV investors was used to repay loans previously issued to developers by Fund I and Fund III.  Further, money raised from Fund IV's investors was used to pay distributions to Fund III's investors and to pay other Fund III financial obligations.

3.    In or around 2014, defendants **Hollis Morrison Greenlaw** and **Benjamin Lee Wissink** began the process of forming a subsequent Fund entity, Fund V.  Third party firms and investors were led to believe that Fund V would not engage in affiliate transactions with the other Fund entities.  However, beginning in or around December 2014, because developers were not repaying Fund III and Fund IV loans quickly enough to meet the obligations of Fund III and Fund IV, Fund V began issuing loans to developers for developments that previously had loans with Fund III and Fund IV.  The Fund V loans were then used to repay the loans previously issued to developers by Fund III and Fund IV.  Further, beginning in or around December 2014, Fund V's investors'

money was used to pay distributions to Fund III and Fund IV's investors and to pay other Fund III financial obligations, contrary to representations made to Fund V's investors.

4.      Between on or about January 24, 2011, and on or about November 24, 2015, approximately $65 million in Fund IV investors' money was used to pay Fund III investors a purported return on their investment and pay other Fund III financial obligations.  Likewise, in or about December 2014, approximately $2.7 million in Fund V investors' money and money obtained by Fund V from a financial institution was used to pay Fund IV investors a purported return on their investment, contrary to representations made to Fund V investors.  Further, between on or about July 23, 2015 and December 29, 2015, approximately $4.7 million in Fund V investors' money was used to pay Fund III investors a purported return on their investment and to pay other Fund III financial obligations, contrary to representations made to Fund V investors.

### The Fund Entities

5.      Corporation 1 was a Delaware corporation.  Defendant **Hollis Morrison Greenlaw** owned 33.75% of Corporation 1.

6.      Fund I was a Delaware private limited partnership.  Corporation 1 was the general partner of Fund I.

7.      Corporation 2 was a Delaware corporation.  Defendant **Hollis Morrison Greenlaw** owned 50% of Corporation 2.

8.      Fund II was a Delaware private limited partnership.  Corporation 2 was the general partner of Fund II.

9.      Fund III was a Delaware limited partnership with its principal executive

offices located in Grapevine, Texas. Fund III's stated principal business purpose was to originate, acquire, service, and otherwise manage a portfolio of mortgage loans that were secured by real property, or equity interests that held real property already subject to other mortgages, and to issue and acquire an interest in credit enhancements for the benefit of borrowers. Fund III raised approximately $350 million from investors by selling units that were registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Securities Exchange Act of 1934. As of on or about December 31, 2014, Fund III had originated loans with an aggregate principal amount of approximately $636.9 million.

10.     Fund IV was a Maryland real estate investment trust ("REIT") with its principal executive offices located in Grapevine, Texas. Fund IV's stated purpose was to primarily originate, purchase, participate in, and hold for investment secured loans made by Fund IV, or indirectly through its affiliates, to persons and entities for the acquisition and development of parcels of real property as single-family residential lots, or mixed-use master planned residential communities, for the construction of single-family homes. Fund IV had various subsidiaries including, Fund IV Limited Partnership I through Fund IV Limited Partnership IX. Fund IV raised approximately $651 million from investors by selling shares that were registered with the SEC pursuant to Section 12 of the Securities Exchange Act of 1934. On or about June 4, 2014, Fund IV's shares were listed on the NASDAQ Global Select Market. As of December 31, 2014, Fund IV had originated loans with an aggregate principal amount of approximately $618 million.

11.     Limited Partnership 1 was a Delaware limited partnership. Limited

Partnership 1 was the general partner and advisor of Fund IV.

12.    Corporation 3 was a Delaware corporation.  Defendant **Hollis Morrison Greenlaw** owned one-half of the equity interests in Corporation 3.  Corporation 3 was the general partner of Limited Partnership 1 and owned 0.1% of Limited Partnership 1.

13.    Limited Partnership 2 was a Delaware limited partnership.  Defendant **Hollis Morrison Greenlaw** owned 30% of Limited Partnership 2.  Defendants **Benjamin Lee Wissink** and **Cara Delin Obert** owned 10.09% and 4.82% respectively of Limited Partnership 2.  Corporation 3 was the general partner of Limited Partnership 2.  Limited Partnership 2 was a limited partner and owned 99.9% of Limited Partnership 1.

14.    Limited Partnership 3 was a Delaware limited partnership.  Corporation 3 was the general partner of Limited Partnership 3 and owned 0.1% of Limited Partnership 3.  Limited Partnership 2 was a limited partner and owned 99.9% of Limited Partnership 3.  Limited Partnership 3 was the asset manager of Fund I, Fund II, and Fund IV, and was the general partner of Fund III.  Limited Partnership 4, a Delaware limited partnership, was a wholly owned subsidiary of Limited Partnership 3.

15.    Fund V was a Maryland REIT with its principal executive offices located in Grapevine, Texas.  Fund V's stated purpose was to originate, purchase, and hold for investment secured loans for the acquisition of land and development of parcels of real property into single-family residential lots, and to make direct investments in land acquisitions for development into single-family lots and provide credit enhancements to real estate developers, land bankers, and other real estate investors.  According to Fund V's Prospectus filed with the SEC on April 30, 2015, the maximum total offering to

investors was $1 billion for Fund V. As of on or about September 30, 2015, Fund V raised approximately $42.9 million from investors by selling shares that were registered with the SEC pursuant to Section 12 of the Securities Exchange Act of 1934. As of on or about September 30, 2015, Fund V originated loans with an aggregate principal amount of approximately $45 million.

16.     Limited Partnership 5 was a Delaware limited partnership.

17.     Limited Partnership 6 was a Delaware limited partnership. Defendant **Hollis Morrison Greenlaw** owned 37% of Limited Partnership 6. Defendants **Benjamin Lee Wissink, Cara Delin Obert,** and **Jeffrey Brandon Jester** owned 12.75%, 4%, and 2% respectively of Limited Partnership 6. Limited Partnership 6 was a co-sponsor of the Fund V offering. Limited Partnership 6 owned 100% of the limited partnership interests of Limited Partnership 5.

18.     Limited Partnership 7 was a Delaware limited partnership. Limited Partnership 7 was the asset manager of Fund V. Limited Partnership 6 owned 100% of the limited partnership interests of Limited Partnership 7.

### The Defendants

19.     Defendant **Hollis Morrison Greenlaw** was the President and Chief Executive Officer of Fund III and Limited Partnership 3.  **Greenlaw** was also the President, Chief Executive Officer, and Director of Corporation 3.  **Greenlaw** was further the Chief Executive Officer and Chairman of the Board of Trustees of Fund IV and Fund V.  **Greenlaw** was one of three voting members of the investment committees for Fund III, Fund IV, and Fund V.  **Greenlaw** signed the Forms 10-K, 10-Q, and 8-K filed with the SEC for Fund III, Fund IV, and Fund V.

20.     Defendant **Benjamin Lee Wissink** was the President of Limited Partnership 7 and one of three voting members of the investment committees for Fund III, Fund IV, and Fund V.  **Wissink** was the Chief Operating Officer of Corporation 3.

21.     Defendant **Cara Delin Obert** was the Chief Financial Officer of Limited Partnership 3, Fund IV, Fund V, and Limited Partnership 7.  **Obert** signed the Forms 10-K and 10-Q filed with the SEC for Fund III, Fund IV, and Fund V.

22.     Defendant **Jeffrey Brandon Jester** was the Director of Asset Management of Limited Partnership 3 and Limited Partnership 7.

### The Federal Securities Laws, SEC Rules and Regulations, and Filings with the SEC

23.     The SEC is an independent agency of the United States government that was charged by law with preserving honest and efficient markets in securities.  The federal securities laws, regulations, and rules were designed to ensure that the financial information of publicly traded companies was accurately recorded and disclosed to the investing public.  Publicly traded companies and their directors, officers, and employees

are required to comply with federal securities laws, regulations, and rules.

24.     Under federal securities laws and regulations, Fund III, Fund IV, and Fund V, issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*), were required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)).

25.     Under federal securities laws and regulations, Fund III, Fund IV, and Fund V were required, among other things, to file with the SEC annual reports (known as SEC Forms 10-K), quarterly reports (known as SEC Forms 10-Q), and other periodic reports that included accurate and reliable financial statements.

Third Party Transfer Agent, Financial Institutions, and Residential Developments

26.     Corporation 4 was a third-party company, with offices in Kansas City, Missouri, that received investors' funds and disbursed distributions to investors for Fund III, Fund IV, and Fund V.

27.     Bank 1 was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and had a location in the Northern District of Texas.  Fund III had bank accounts at multiple financial institutions, which included accounts at Bank 1 ending in 3401 (operating account) and 3266 (deposit control account).  In or about October 2015, Bank 1 changed its name to Bank 2.  Bank 2 was a financial institution, the deposits of which were insured by the FDIC.

28.     Bank 3 was a financial institution, the deposits of which were insured by the FDIC, and had a location in the Northern District of Texas.  In or about December 2013, Fund IV Limited Partnership VIII obtained a $15 million loan from Bank 3.

29.     Bank 4 was a financial institution, the deposits of which were insured by the FDIC. Fund III had bank accounts at multiple financial institutions, which included an account at Bank 4 ending in 5251. In or about December 2010, Fund IV Limited Partnership II obtained a $5 million loan from Bank 4. In or about April 2014, Bank 5 acquired by merger Bank 4. Bank 5 was a financial institution, the deposits of which were insured by the FDIC.

30.     Bank 6 was a financial institution, the deposits of which were insured by the FDIC. In or about March 2014, Fund III obtained a term loan and a revolving line of credit from Bank 6. Pursuant to the terms of the loans, Fund III was required to make quarterly principal payments (March, June, September, and December) in the amount of $1.25 million on the term loan, and accrued interest payments on a monthly basis. Fund III had bank accounts at multiple financial institutions, which included an account at Bank 6 ending in 6871. Fund V had bank accounts at multiple financial institutions, which included Bank 6 accounts ending in 4241 (operating account) and 6863 (clearing account). In or about November 2019, Bank 5 acquired by merger Bank 6.

31.     Bank 7 was a financial institution, the deposits of which were insured by the FDIC. Corporation 4 had a bank account ending in 9607 with Bank 7.

32.     Bank 8 was a financial institution, the deposits of which were insured by the FDIC, and had locations in the Northern District of Texas. Fund V had bank accounts at multiple financial institutions, which included an account at Bank 8 ending in 0282. On or about November 14, 2014, Fund V obtained a $10 million loan from Bank 8. On or about July 15, 2015, Bank 8 issued a $16,275,000 development loan to Development

6, a residential development project.  Defendant **Hollis Morrison Greenlaw** executed a $4 million limited guaranty on the Bank 8 loan issued to Development 6.

33.   Bank 9 was a financial institution, the deposits of which were insured by the FDIC.  In or around October 2014, Fund IV Limited Partnership IX obtained an $8 million loan from Bank 9.  A covenant of the loan stated the "facility will only be used to finance lot loans, interim construction and land development in Texas."  Defendant **Hollis Morrison Greenlaw** accepted and agreed to the covenants.  In or around June 2017, Bank 10 acquired by merger Bank 9.  Bank 10 was a financial institution, the deposits of which were insured by the FDIC.

34.   Between in or around December 2014 and in or around October 2015, Fund V originated eight loans totaling approximately $132,062,200, for eight residential developments located in the Dallas and Houston, Texas areas.

Count One
Conspiracy to Commit Wire Fraud Affecting a Financial Institution
[Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1343)]

35.     Paragraphs 1 through 34 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

36.     From on or about January 1, 2011, through on or about December 29, 2015, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert,** and **Jeffrey Brandon Jester**, did knowingly and willfully conspire, combine, confederate, and agree together and with others known and unknown to the Grand Jury, to violate 18 U.S.C. § 1343, that is, did knowingly execute and attempt to execute a scheme and artifice to defraud the investing public, and shareholders of Fund III, Fund IV, and Fund V, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, thereby, affecting a financial institution.

## Purpose of the Conspiracy

37.     The purpose of the conspiracy was to: (a) conceal from Fund III, Fund IV, and Fund V's shareholders, the investing public, due diligence entities, external auditors, and the SEC the true performance of Fund III's business; (b) conceal from Fund III, Fund IV, and Fund V's shareholders, the investing public, due diligence entities, external auditors, and the SEC Fund III's financial condition, in order to encourage investment in later funds, e.g., Fund IV and Fund V; and (c) enrich defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert, Jeffrey Brandon Jester**, and others through the continued receipt of compensation.

## Manner and Means

38.     The manner and means by which defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert, Jeffrey Brandon Jester**, and others sought to accomplish the purpose of the conspiracy including, among other things:

39.     Beginning at least on or about March 31, 2010, defendants **Hollis Morrison Greenlaw, Cara Delin Obert**, and others caused filings to be submitted to the SEC, and disclosed to the public, that stated Fund III paid monthly distributions to limited partners at an annualized rate of return of 9.75%.  **Greenlaw, Obert**, and others further caused filings to be submitted to the SEC, and disclosed to the public, which stated that "cash available for distributions are the funds received by [Fund III] from operations."

40.     Beginning in or around January 2011, Fund III had insufficient cash available in its bank accounts to pay distributions to Fund III's investors.  Upon learning

that Fund III had insufficient funds available to pay distributions, defendants **Benjamin Lee Wissink, Cara Delin Obert, Jeffrey Brandon Jester**, and others caused money to be transferred from a Fund IV bank account to a Fund III bank account. **Wissink, Obert**, and others then caused the money to be transferred to Corporation 4's bank account to pay Fund III's investors' distributions.

41.    Beginning on or about February 26, 2014, and continuing through on or about November 13, 2015, defendants **Hollis Morrison Greenlaw, Cara Delin Obert**, and others caused filings to be submitted to the SEC, and disclosed to the public, that claimed the following about Fund V:

(a)    Fund V was "formed to generate current interest income by investing in secured loans and producing profits from investments in residential real estate;"

(b)    Fund V would "derive a significant portion of [its] income by originating, purchasing and holding for investment secured loans for the acquisition and/or development of parcels of real property into single-family residential lots;"

(c)    Fund V would "make direct investments in land for development into single-family lots; however, [it] [would] not independently develop land;"

(d)    Fund V would "not participate in any investments with [its] advisor entities or any of their affiliates, including any prior program sponsored by affiliates" of Limited Partnership 6;

(e)    Fund V would "not participate in any investments with [its] advisor

entities or any of their affiliates, including any prior [Fund entity] program;"

(f)     Fund V "shall not (i) sell any loan to, (ii) acquire any loan from, or (iii) participate in any loan with any" of Limited Partnership 3, Limited Partnership 7, or any other Fund entity;

(g)     Fund V "shall not (i) sell any asset to, (ii) acquire any asset from, (iii) participate in any asset with, or (iv) invest jointly in any asset with any" of Limited Partnership 3, Limited Partnership 7, or any other Fund entity;

(h)     Fund V "will not make loans to, participate in real estate investments with, or provide credit enhancements for, [its] affiliates or affiliates of [its] co-sponsors, [its] Advisor Entities or [its] asset manager, including other [Fund entity] funds;"

(i)     Fund V "intends to use substantially all of the net proceeds from the Offering (as defined in Note C) to originate, purchase and hold for investment secured loans for the acquisition of land and/or development of parcels of real property into single-family residential lots;" and

(j)     Fund V "also intends to make direct investments in land acquisitions for development into single-family lots and provide credit enhancements to real estate developers, land bankers and other real estate investors."

42.     Beginning on or about May 15, 2014, defendants **Hollis Morrison Greenlaw, Cara Delin Obert**, and others caused Forms 10-Q and 10-K for Fund III to be submitted to the SEC, and disclosed to the public, which claimed that the proceeds from the operations of Fund III would be used to repay the Bank 6 loans.

43.     Beginning in or about July 2014, Fund III had insufficient cash available in bank accounts to pay the Fund III loan held at Bank 6.  Upon learning that Fund III had insufficient funds available to pay the $1.25 million quarterly principal payment due and owing, defendants **Benjamin Lee Wissink, Jeffrey Brandon Jester**, and others caused money to be transferred from other Fund entities' bank accounts, e.g. Fund IV, to a Fund III bank account.  **Wissink** then caused the loan payments to be made to Bank 6.

44.     Beginning at least in or around August 2014, defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert**, and others caused presentations to be made to financial advisors, brokers, dealers, third party due diligence entities, and sales personnel that claimed, unlike Fund IV, Fund V would not participate in "affiliate transactions."

45.     Beginning in or around December 2014, defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink**, and another individual, approved and caused Fund V to issue loans to borrowers for developments that already had loans with Fund III and Fund IV, namely, Development 1, Development 3, and Development 5 through Development 8.  Defendants **Wissink, Jeffrey Brandon Jester**, and others then caused the Fund III and Fund IV loans to be paid off by causing wire transfers: (a) from a Fund V bank account to title companies; (b) from a Fund V bank account to Fund III and Fund IV's bank accounts; and (c) from a Fund V bank account to the borrower entities which then transferred the money to Fund III and Fund IV's bank accounts.

46.     Beginning in or around December 2014, Fund IV had insufficient cash available in its bank accounts to pay distributions to its investors in a manner consistent

with its past track record.  Upon learning that there was insufficient funds available to pay these distributions, Fund entity personnel and others caused money to be transferred from Fund V's bank account to a borrower entity's bank account.  A portion of the money transferred was from the Bank 8 loan that Fund V obtained, and a portion of the money transferred was Fund V's investors' money.  At the direction of Fund entity personnel, the borrower entity then transferred the money to Fund IV's bank account.  In addition, Fund entity personnel caused the transfer of money from the Fund IV Limited Partnership IX loan obtained from Bank 9 to Fund IV's bank account.  Defendant **Benjamin Lee Wissink** and others then caused the money to be transferred to Corporation 4's bank account to pay Fund IV's investors' purported distributions.

47.     In or around June 2015, personnel acting on behalf of Fund III requested from Bank 6 a delay in making its quarterly principal payment of $1.25 million on the term loan with Bank 6 until September.  The request was granted by Bank 6; however, the quarterly principal payment was not made in September.  Thereafter, in or around November 2015, Fund III requested a second delay in making the $1.25 million quarterly principal payment originally due in June 2015, and the requested delay was denied.

48.     Beginning in or around July 2015, Fund III and Fund IV had insufficient cash available in bank accounts to pay distributions to Fund III's investors.  Upon learning that there were insufficient funds available to pay distributions, defendants **Benjamin Lee Wissink, Cara Delin Obert, Jeffrey Brandon Jester**, and others caused money to be transferred from Fund IV and Fund V's bank accounts to Fund III's bank accounts.  **Wissink** and others then caused the money to be transferred to a Corporation 4

bank account to pay Fund III's investors' distributions.

49.     On or about December 3, 2015, a representative of Fund III scheduled a call between the Fund III representative, defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink**, and Bank 6 personnel to discuss Fund III's delinquent loan status.  During the call, Bank 6 personnel informed the Fund III representative, **Greenlaw,** and **Wissink** that the bank would consider restructuring payments once the delinquent quarterly payment was made to the bank.  The Fund III representative, **Greenlaw**, and **Wissink** represented that the delinquent quarterly principal payment would be paid before December 10, 2015.

50.     On or about December 9, 2015, a Bank 6 employee emailed defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink**, and the Fund III representative, and asked if the outstanding payment would be wired to the bank.  **Wissink** notified the Bank 6 employee that payment should be wired later that day.  Thereafter, because Fund III had insufficient funds available to pay the $1.25 million quarterly principal payment due and owing from its own accounts, defendants **Wissink, Jeffrey Brandon Jester**, and others caused a borrower to execute an advance request on a loan held with Fund V. Following execution of the advance request, **Wissink, Jester**, and others caused money to be transferred from Fund V's bank account to a Fund III bank account.  **Wissink** and others then caused the loan payment to be made to Bank 6 purportedly from Fund III, but in reality using funds derived from Fund V investors contrary to representations made to Fund V's investors as to how their money would be used.

51.     Defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara**

**Delin Obert, Jeffrey Brandon Jester**, and others acting in furtherance of the scheme to defraud, caused Fund III and Fund V to file Forms 10-K and 10-Q with the SEC containing false and fraudulent representations concerning:

        (a)    the source of funds used to pay Fund III distributions;

        (b)    the source of funds used to pay the Fund III Bank 6 loans;

        (c)    the use of funds with respect to loans funded by Fund V; and

        (d)    the use of Fund V investors' money.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1343).

Count Two
Conspiracy to Commit Securities Fraud
[Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1348)]

52.     Paragraphs 1 through 34 and 37 through 51 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

53.     From on or about January 1, 2011, through on or about December 29, 2015, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert,** and **Jeffrey Brandon Jester**, did knowingly and willfully conspire, combine, confederate, and agree together and with others known and unknown to the Grand Jury, to violate 18 U.S.C. § 1348, that is, to knowingly and intentionally execute a scheme and artifice (a) to defraud any person in connection with any security of Fund III, Fund IV, and Fund V, issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)), and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any security of Fund III, Fund IV, and Fund V, issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1348).

Counts Three through Ten
Securities Fraud and Aiding and Abetting
[Violation of 18 U.S.C. §§ 1348 and 2]

54.     The General Allegations in paragraphs 1 through 34 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

55.     From on or about January 1, 2011, through on or about December 29, 2015, the defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert,** and **Jeffrey Brandon Jester** engaged in a scheme to defraud.

56.     As a part of the scheme, the defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert,** and **Jeffrey Brandon Jester**, aided and abetted by one another, did knowingly and intentionally execute and attempted to execute, a scheme and artifice (a) to defraud any person in connection with securities registered under Section 12 of the Securities Exchange Act of 1934, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of any such security.

Purpose of the Scheme and Artifice

57.     The purpose of the scheme was to: (a) conceal from Fund III, Fund IV, and Fund V's shareholders, the investing public, due diligence entities, external auditors, and the SEC the true performance of Fund III's business; (b) conceal from Fund III, Fund IV, and Fund V's shareholders, the investing public, due diligence entities, external auditors, and the SEC Fund III's financial condition, in order to encourage investment in later funds, e.g., Fund IV and Fund V; and (c) enrich defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert, Jeffrey Brandon Jester**, and others through

the continued receipt of compensation.

The Scheme and Artifice

58.     The Manner and Means paragraphs in 38 through 51 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

Executions of the Scheme and Artifice

59.     On or about the dates listed below for each count, the defendants **Hollis Morrison Greenlaw, Benjamin Lee Wissink, Cara Delin Obert,** and **Jeffrey Brandon Jester**, and others, for the purpose of executing and in furtherance of the aforementioned scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly execute and cause the execution of the following acts as more particularly described in each count below:

| Count | Approximate Date | Act in Execution of Scheme and Artifice |
|-------|------------------|------------------------------------------|
| Three | March 31, 2015 | Causing Fund III to report to public investors, through its 2014 Form 10-K Annual Report, false and misleading information concerning the source of the funds used to pay distributions and the Bank 6 loan, while concealing that the funds were derived from Fund IV investors. |
| Four | March 31, 2015 | Causing Fund V to report to public investors, through its 2014 Form 10-K Annual Report, false and misleading information concerning loans originated and funded by Fund V, while concealing that the loans were made to developments that had previously obtained loans from an earlier Fund entity, and that the Fund V loans were used to pay off loans from an earlier Fund entity. |

| Count | Approximate Date | Act in Execution of Scheme and Artifice |
|---|---|---|
| Five | May 15, 2015 | Causing Fund III to report to public investors, through its Form 10-Q Quarterly Report for the period ending March 31, 2015, false and misleading information concerning the source of the funds used to pay distributions and to pay the Bank 6 loan, while concealing that the funds were derived from Fund IV investors. |
| Six | May 15, 2015 | Causing Fund V to report to public investors, through its Form 10-Q Quarterly Report for period ending March 31, 2015, false and misleading information concerning loans originated and funded by Fund V, while concealing that the loans made to developments that had previously obtained loans from an earlier Fund entity, and that the Fund V loans were used to pay off loans from an earlier Fund entity. |
| Seven | August 14, 2015 | Causing Fund III to report to public investors, through its Form 10-Q Quarterly Report for the period ending June 30, 2015, false and misleading information concerning the source of the funds used to pay distributions and the Bank 6 loan, while concealing that the funds were derived from Fund IV investors. |
| Eight | August 14, 2015 | Causing Fund V to report to public investors, through its Form 10-Q Quarterly Report for period ending June 30, 2015, false and misleading information concerning loans originated and funded by Fund V, while concealing that the loans were made to developments that had previously obtained loans from an earlier Fund entity, and that the Fund V loans were used to pay off loans from an earlier Fund entity. |
| Nine | November 16, 2015 | Causing Fund III to report to public investors, through its Form 10-Q Quarterly Report for the period ending September 30, 2015, false and misleading information concerning the source of the funds used to pay distributions and the Bank 6 loan, while concealing that the funds were derived from Fund IV and Fund V investors. |

| Count | Approximate Date | Act in Execution of Scheme and Artifice |
|-------|------------------|------------------------------------------|
| Ten | November 13, 2015 | Causing Fund V to report to public investors, through its Form 10-Q Quarterly Report for period ending September 30, 2015, false and misleading information concerning loans originated and funded by Fund V, and the use of Fund V's investors' money, while concealing that the loans were made to developments that had previously obtained loans from an earlier Fund entity, that the Fund V loans were used to pay off loans from an earlier Fund entity, and that Fund V's investors' money was being used to pay purported distributions to Fund III investors. |

In violation of 18 U.S.C. §§ 1348 and 2.

Forfeiture Notice
[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

60.    Upon conviction of any of the offenses alleged in Counts One through Ten

of this Indictment, and pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28

U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2)(A), the defendants **Hollis Morrison**

**Greenlaw, Benjamin Lee Wissink, Cara Delin Obert,** and **Jeffrey Brandon Jester,**

shall forfeit to the United States of America all property constituting or derived from

proceeds traceable to the respective offenses, including a money judgment in the amount

of U.S. currency constituting the proceeds traceable to the scheme alleged in the offense.

61.    Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if

any of the above property subject to forfeiture, as a result of any act or omission of the

defendant, cannot be located upon the exercise of due diligence; has been transferred or

sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the

Court; has been substantially diminished in value; or has been commingled with other

property which cannot be subdivided without difficulty, it is the intent of the United

States of America to seek forfeiture of any other property of the defendant up to the value

of the above described property subject to forfeiture.

A TRUE BILL

FOREPERSON

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

TIFFANY H. EGGERS
Assistant United States Attorney
Florida Bar No. 0193968
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600; Fax: 214-659-8805
Email: Tiffany.Eggers@usdoj.gov

ERRIN MARTIN
Assistant United States Attorney
Texas Bar No. 24032572
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600; Fax: 214-659-8805
Email: Errin.Martin@usdoj.gov

L. RACHAEL JONES
Assistant United States Attorney
Texas Bar No. 24032481
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600; Fax: 214-659-8803
Email: Rachael.Jones@usdoj.gov

ELYSE LYONS
Assistant United States Attorney
Texas Bar No. 24092735
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600; Fax: 214-659-8803
Email: Elyse.Lyons@usdoj.gov

Indictment—Page 25 of 25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

v.

HOLLIS MORRISON GREENLAW (01)
BENJAMIN LEE WISSINK (02)
CARA DELIN OBERT (03)
JEFFREY BRANDON JESTER (04)

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1343)
Conspiracy to Commit Wire Fraud Affecting a Financial Institution
(Count 1)

18 U.S.C. § 1349 (18 U.S.C. § 1348)
Conspiracy to Commit Securities Fraud
(Count 2)

18 U.S.C. §§ 1348 and 2
Securities Fraud and Aiding and Abetting
(Counts 3, 4, 5, 6, 7, 8, 9, and 10)

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)
Forfeiture Notice

10 Counts

A true bill rendered

-----------------------------------------------------------------
FOREPERSON
DALLAS
Filed in open court this 15th day of October, 2021.

-----------------------------------------------------------------
**Warrant to be Issued for all Defendants**

-----------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending